IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| NATHANIEL BONTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-06-698-F |
| | ) | |
| LT. PLASTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

Mr. Nathaniel Bonty is an inmate challenging the conditions of his confinement under 42 U.S.C. § 1983 and state law.[1] Defendants Lt. Plaster, C. Moody, Roberta Hickey, James Bryant, and Corrections Corporation of America ("CCA") have moved for dismissal.[2] The Court should grant the Defendants' motions and summarily dismiss[3] the federal claims

---

[1] In the amended complaint, Mr. Bonty invokes 42 U.S.C. § 1983. Amended Complaint at pp. 1-2, 16 (Nov. 16, 2006) ("Amended Complaint"). In the body of the document, the Plaintiff also relies on the Oklahoma constitution and asserts claims for negligence and intentional infliction of emotional distress. *Id.* at pp. 1, 20-26.

[2] The Plaintiff states that the Defendants have requested conversion of their motions to motions for summary judgment. Plaintiff's Response to Defendants' CCA, Plaster, Hickey, and Moody's Amended Motion to Dismiss and Brief in Support and Defendant Bryant's Motion to Dismiss and Brief in Support at p. 2 (Mar. 26, 2007) ("Plaintiff's Response"). Mr. Bonty has misunderstood the Defendants' statements. The Defendants did not request conversion. Instead, they argue that the Court could consider the attached administrative materials in the resolution of the motions to dismiss. Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 1-2 (Mar. 5, 2007); Defendant's Motion to Dismiss and Brief in Support at pp. 1-2 (Mar. 5, 2007).

[3] The Plaintiff is appearing *in forma pauperis*. *See* Order Granting Leave to Proceed *In Forma Pauperis* (July 14, 2006). Therefore, the Court should independently review the federal causes of action to determine whether they are subject to dismissal based on failure to state a valid claim. *See* Prison Litigation Reform Act, 28 U.S.C. § 1915(e)(2)(B)(ii) (2000); *see also* Prison Litigation Reform Act, 42 U.S.C. § 1997e(c)(1) (2000) (authorizing *sua sponte* dismissal for failure to state

involving retaliation, violation of the Eighth Amendment, and denial of meaningful administrative remedies.[4] Mr. Bonty's claims under the state law should remain.

## I. FACTUAL BACKGROUND

In a disciplinary hearing, Mr. Bonty pled guilty to a disciplinary infraction involving possession of unauthorized food. *See* Amended Complaint at pp. 7, 10 & Exh. B. He was ordered to pay restitution and was fired from his work assignment. *See id.* at p. 7 & Exh. B. When the Plaintiff obtained a new job, officials lowered his pay grade. *See id.* at pp. 8-9.

Mr. Bonty alleges:

- negligence,
- intentional infliction of emotional distress,
- retaliation,
- conspiracy,
- denial of equal protection based on race discrimination,
- cruel and unusual punishment, and

---

a valid claim when a prisoner sues under federal law with respect to prison conditions).

[4] CCA has requested dismissal of the federal claims based on a lack of participation and the absence of vicarious liability. Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 14-15 (Mar. 5, 2007). As noted in the text, however, the undersigned recommends dismissal of all of the federal causes of action. *See supra* text accompanying note. If the proposed rulings were issued, the Court would not need to address CCA's arguments involving a lack of participation or vicarious liability.

- due process violations based on denial of meaningful administrative remedies, failure to investigate or provide a hearing before termination of his employment, termination of employment in violation of prison policies, and reduction in pay.[5]

Amended Complaint, *passim.*

## II. STANDARD FOR DISMISSAL BASED ON FAILURE TO STATE A VALID CLAIM

Dismissal for failure to state a valid claim is proper only if "the plaintiff can prove no set of facts in support . . . that would entitle [ him] to relief." *Roman v. Cessna Aircraft Co.*, 55 F.3d 542, 543 (10th Cir. 1995). The well-pleaded factual allegations in the amended complaint must be accepted as true and construed in the light most favorable to the Plaintiff. *See Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). A *pro se* complaint like Mr. Bonty's must be broadly construed under this standard. *See Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002).

## III. PARTIAL NONEXHAUSTION OF AVAILABLE ADMINISTRATIVE REMEDIES

Federal law provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) (2000). This law "requires

---

[5] The amended complaint could be read to include a due process claim stemming from a liberty interest in his prison job. *See* Amended Complaint at p. 12 (claiming "a due process liberty-interest program unassignment"). But the Plaintiff rejects the interpretation, "conced[ing] that there is no constitutional right to a workline ('prison job') assignment." Plaintiff's Response at p. 14; *see also infra* p. 13.

proper exhaustion" of the prison's administrative remedies. *Woodford v. Ngo*, ___ U.S. ___, 126 S. Ct. 2378, 2387 (2006).

The Diamondback Correctional Facility ("DCF") has created a three step administrative process. *See* Amended Complaint, Exh. I. First, an inmate can attempt to informally resolve the claim with a request to staff. *See id.*, Exh. I at p. 2. Second, if the prisoner is dissatisfied with the result, he can file a grievance form with the facility's grievance officer. *See id.*, Exh. I at pp. 2, 4. Finally, if the inmate remains dissatisfied, he can appeal to the warden. *See id.*, Exh. I at p. 6.

Mr. Bonty alleges exhaustion of administrative remedies and attaches numerous documents. Amended Complaint, Exhs. C, F, G. These documents reflect exhaustion of the claims involving:

- retaliation,[6]
- termination of employment in violation of prison policy,
- existence of a liberty interest in pay status, and

[6] The Defendants argue that Mr. Bonty's grievance concerning retaliation was not sufficiently specific. For example, the Defendants believe that the Plaintiff had to identify the right that gave rise to the retaliation. *See* Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 11-12 (Mar. 5, 2007). But a grievance need not "lay out the facts, articulate legal theories, or demand particular relief." *Kikumura v. Osagie*, 461 F.3d 1269, 1283 (10th Cir. 2006) (discussing with approval *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). Instead, a grievance satisfies the exhaustion requirement "so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Id.* at 1282-85. Mr. Bonty's reference to retaliation should have put officials on notice of the claim.

- cruel and unusual punishment.[7]

However, Mr. Bonty's grievances do not reflect exhaustion of the claims regarding:

- conspiracy,
- denial of equal protection based on race,[8] or
- termination of employment without an investigation or hearing.

*See id.*, Exhs. C, F, G.[9]

Mr. Bonty argues that the Defendants should be equitably estopped from invoking an exhaustion defense based on a misrepresentation by the grievance officer. Plaintiff's Response at pp. 7-8; *see* Amended Complaint at p. 15 (anticipating an exhaustion defense

---

[7] The Defendants move for dismissal in part because Mr. Bonty failed to name all of the individual defendants in his grievances. According to the Defendants, the omissions resulted in nonexhaustion of the claims against each individual defendant. Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 9-11 (Mar. 5, 2007); Defendant's Motion to Dismiss at p. 9 (Mar. 5, 2007). But the DCF policy does not require an inmate to name individual officers in a grievance. *See* Amended Complaint, Exh. I, *passim*. Thus, dismissal is not warranted on grounds involving a failure to name the individual defendants in the grievances. *See Jones v. Bock*, ___ U.S. ___, 127 S. Ct. 910, 923 (2007) ("As the [applicable grievance] procedures make no mention of naming particular officials, the Sixth Circuit's rule imposing such a prerequisite to proper exhaustion is unwarranted.").

[8] The Plaintiff suggested in a grievance that Defendant Plaster had been more lenient with other inmates. Amended Complaint, Exh. C at p. 2. But Mr. Bonty did not attribute the action to racial discrimination. *See id.* Under these circumstances, the Plaintiff did not exhaust his claim involving termination based on race. *See Smith v. Rudicel*, 123 Fed. Appx. 906, 907 (10th Cir. Feb. 17, 2005) (unpublished op.) (upholding a dismissal for nonexhaustion when the prisoner's grievances "failed to allege the racial basis that his § 1983 claim [based on unequal treatment] now entails").

[9] Mr. Bonty points out that in the absence of an emergency, DCF policy limited prisoners to two grievances pending at any given time. Plaintiff's Response at p. 8; *see* Amended Complaint, Exh. I at p. 3. But a prisoner could file more than two grievances. *See* Amended Complaint, Exh. I at p. 3. In this situation, officials would log all of the grievances and hold them until one of the pending grievances has been fully processed. *See id.*

with an allegation that Roberta Hickey's remark had misled the Plaintiff about the availability of administrative remedies).

In a grievance, Mr. Bonty complained about removal from his job. Amended Complaint, Exh. C. He asked for three remedies:

- reinstatement as an administration orderly,
- preclusion of further retaliation by Lt. Plaster, and
- counseling of Lt. Plaster.

*Id.*, Exh. C. The grievance officer denied relief, stating that Mr. Bonty could be dismissed from his job based on the disciplinary conviction. *Id.* In light of the separate request for counseling of Lt. Plaster, the grievance officer noted in her report: "Action against staff will not be addressed through the grievance department. Please address his supervisor Captain Troxell." *Id.*

The Tenth Circuit Court of Appeals has not decided whether to apply the doctrine of equitable estoppel in the context of administrative exhaustion under 42 U.S.C. § 1997e(a) (2000). *See Jernigan v. Stuchell*, 304 F.3d 1030, 1033 (10th Cir. 2002) (declining to decide whether the doctrine of equitable estoppel applies to an issue involving administrative exhaustion). But as the Plaintiff acknowledges, recognition of the doctrine would require him to demonstrate misrepresentation, reasonable reliance on the misrepresentation, and

detriment. Plaintiff's Response at p. 8; *see Hoover v. West*, 93 Fed. Appx. 177 (10th Cir. Feb. 19, 2004) (unpublished op.).[10] The Plaintiff lacks proof regarding any of the elements.

First, no misrepresentation took place. As Mr. Bonty acknowledges, the administrative policy expressly provides that "[i]ndividual staff" actions are "grievable." Amended Complaint, Exh. I at p. 2. But because the Plaintiff requested counseling of Lt. Plaster, the grievance officer noted that the desired remedy should be addressed through the officer's supervisor rather than through a grievance. *Id.*, Exh. C at p. 1. In making this statement, the grievance officer did not regard the other matters being raised as "non-grievable." Instead, the grievance officer stated in her report: "I am denying reinstatement to your assignment as an Administration Orderly due to your disciplinary received on 2/2/06. You plead guilty and have been found guilty for a Major 14 Possession of Contraband." *Id*. Then, in her decision, the grievance officer concluded: "Grievance denied. Inmates may be removed from an assignment for cause whenever their conduct or performance is considered unsatisfactory by the supervisor, Unit Manager, or may be dismissed as a result of a conviction of a disciplinary infraction." *Id*. The grievance officer's explanation cannot reasonably be read to suggest the inapplicability of the grievance process to any staff misconduct.

---

[10] In *Hoover v. West*, the Tenth Circuit Court of Appeals noted that it had earlier declined to decide whether equitable estoppel applies to the Prison Litigation Reform Act's exhaustion requirement. *Hoover v. West*, 93 Fed. Appx. at 182. But the court stated that if the doctrine applied, the plaintiff would have to show misrepresentation by the defendants, reasonable reliance on the misrepresentation, and detriment. *Id*. The doctrine did not apply because the plaintiff could not satisfy any of the elements. *Id*.

Second, the Plaintiff did not avoid use of the administrative process based on the grievance officer's statement. Indeed, after receiving the denial, Mr. Bonty appealed. *Id*. In doing so, Mr. Bonty ignored the remark about his inability to take action against staff through the grievance process and focused on the alleged entitlement to return to his prior job: "It's ture [sic] that one possible sanction to a disciplinary infraction is to be 'removed from an assignment for cause' but this sanction must be imposed by the disciplinary officer, else any other holding renders the disciplinary procedure arbitrary and capricious & subject to retaliation by biased persons as in the instant case." *Id*.

After losing the appeal, Mr. Bonty filed a new grievance and appealed an adverse determination. *Id.*, Exh. G.

The two administrative appeals and subsequent grievance belie the Plaintiff's present contention that he had avoided use of the administrative process based on the grievance officer's statement. He clearly knew that he could file grievances about staff conduct.

The grievance officer did not misrepresent the availability of the process, and Mr. Bonty lacks any evidence to suggest that he had failed to file a grievance based on the Defendants' statements. As a result, the Court should reject the Plaintiff's argument involving equitable estoppel even if this doctrine were applicable to a defense of administrative exhaustion. In these circumstances, the Court should dismiss without prejudice the unexhausted claims[11] involving conspiracy, denial of equal protection through

---

[11] *See Steele v. Federal Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003) ("A dismissal based on lack of exhaustion . . . should ordinarily be without prejudice."), *abrogated on other*

race-discrimination, and deprivation of due process through job termination without an investigation or hearing.[12]

IV. CLAIM INVOLVING RETALIATION

Mr. Bonty claims termination of his job as retaliation for "exercising his constitutional due process right to resolve the disciplinary infraction." Amended Complaint at pp. 12, 17. This claim should be summarily dismissed without prejudice.

Section 1983 provides a remedy for retaliation against an inmate for the exercise of a constitutionally protected right. *See Frazier v. Dubois*, 922 F.2d 560, 561-62 (10th Cir. 1990). For this type of claim, however, specificity is necessary:

> [I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights.

*Id.* at 562 n.1.

---

*grounds*, *Jones v. Bock*, __ U.S. __, 127 S. Ct. 910, 918-22 (2007); *see also Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 & 1222-23 (10th Cir. 2001) (remanding with directions to order dismissal without prejudice based on nonexhaustion of available administrative remedies).

[12] The Defendants also contend that the Plaintiff had failed to exhaust the cause of action involving denial of meaningful administrative remedies. Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 2, 5-6, 9-12 (Mar. 5, 2007); Defendant's Motion to Dismiss and Brief in Support at pp. 3, 5-6, 9-12 (Mar. 5, 2007). The Court need not decide whether the Plaintiff had exhausted this cause of action because it fails to state a claim on which relief can be granted. *See* 42 U.S.C. § 1997e(c)(2) (2000) (stating that the court can dismiss an available cause of action for failure to state a valid claim even if the plaintiff has failed to exhaust administrative remedies); *see also infra* pp. 13-14.

Such specificity is absent here. Throughout the complaint, Mr. Bonty identifies official acts that might be regarded as "retaliatory."[13] However, the Plaintiff does not identify the protected activity that gave rise to the retaliation.

In Paragraph 87 of the amended complaint, Mr. Bonty uses "buzz words" suggesting the exercise of protected activity:

> Lt. Plaster, a DbCF employee, acted with deliberate indifference and intentional negligence when he discriminated and retaliated against plaintiff for exercising his constitutional due process right to resolve the disciplinary infraction, because plaintiff was African American and because Lt. Plaster wanted revenge on plaintiff.

Amended Complaint at p. 17. But in the complaint, Mr. Bonty does not identify any efforts to challenge the disciplinary charge. Indeed, with the complaint, Mr. Bonty attaches a grievance involving the retaliation and Mr. Bonty stated in that document: "This is my error and why I pled guilty to the charge and have made no complaint or appeal of the penalty that the Disciplinary Officer imposed." *Id.*, Exh. C at p. 3. With this backdrop, Paragraph 87 is conclusory in light of the Plaintiff's failure to identify the protected activity giving rise to the retaliation. *See, e.g.*, *Tebbetts v. Whitson*, 105 F.3d 670, 1997 WL 2744, Westlaw op. at 3 (10th Cir. Jan. 3, 1997) (unpublished op.) (there can be no retaliation when an inmate is not

---

[13] *E.g.*, Amended Complaint at p. 12 (describing Lt. Plaster's termination of the Plaintiff from the administration workline as "retalitory" [sic]), pp. 16-17 (stating that CCA and its employees had retaliated through the imposition of unwarranted sanctions without due process).

engaged in constitutionally protected activity). Without such specificity in the amended complaint, dismissal without prejudice is necessary.[14]

## V. CLAIMS INVOLVING TERMINATION OF EMPLOYMENT AND REDUCTION IN PAY

The Plaintiff alleges that DCF policy had prohibited termination of his job by Messrs. Plaster and Bryant. Amended Complaint at pp. 4-5, 7, 14, 21-24. Read with his grievance,[15] the complaint suggests due process violations based on:

- the failure to follow prison policies, and
- the failure to transfer the previous salary to a new position.

Mr. Bonty's theories are incorrect.

### A. Violation of Prison Policies

Mr. Bonty argues that two officials had exceeded their authority when they changed the punishment imposed by the disciplinary hearing officer. *See supra* p. 11. According to the Plaintiff, that action is reserved to the warden. Amended Complaint, Exh. C at pp. 2-3. Mr. Bonty also suggests that Defendant Plaster was ineligible to impose punishment because

---

[14] *See Murray v. Albany County Board of County Commissioners*, 211 F.3d 1278, 2000 WL 472842, Westlaw op. at 3 (10th Cir. Apr. 20, 2000) (unpublished op.) (holding that an inmate's cause of action for retaliation under Section 1983 should have been dismissed without prejudice for failure to state a valid claim in the absence of allegations involving retaliatory motive, causation, and personal participation).

[15] Amended Complaint, Exh. C; *see Montana v. Hargett*, 151 Fed. Appx. 633, 636 (10th Cir. Oct. 4, 2005) (unpublished op.) (construing a prisoner's claims by "liberally . . . reading his two access to courts claims . . . along with the grievances [he] attached to the complaint").

he had written the incident report. *See id.* at p. 2. Both claims rest on a violation of DCF policy.

Even if the Plaintiff's allegations were accepted as true, the federal constitution would not require the Defendants to follow DCF policy.[16] Consequently, Mr. Bonty cannot state a valid claim for relief based on the violation of prison policies.[17]

---

16 *See Sandin v. Conner*, 515 U.S. 472, 481-82 (1995) (prison regulations are "not designed to confer rights on inmates"); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("a failure to adhere to administrative regulations does not equate to a constitutional violation" (citation omitted)).

17 *See Gilbreath v. Clark*, 193 Fed. Appx. 741, 743 (10th Cir. July 18, 2006) (unpublished op.) ("The defendants' alleged failure to follow prison rules in terminating [the plaintiff] from his job did not impose an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,' and thus did not implicate due process considerations." (citation omitted)).

B. Transfer With a Reduction in Pay

As Mr. Bonty concedes, he lacked a protected liberty interest in his prison job.[18] Likewise, the Plaintiff lacked any constitutional right to a certain pay level.[19] Therefore, Mr. Bonty has failed to state a valid claim for relief based on the reduction in his pay status.

C. Recommended Disposition

Mr. Bonty failed to state a valid claim for termination of his job or reduction in pay, and the Court should dismiss these causes of action with prejudice. *See Curley v. Perry*, 246 F.3d 1278, 1282 (10th Cir. 2001) (because no amendment could cure the defect, the district court's dismissal with prejudice was proper).

VI. CLAIM INVOLVING DENIAL OF MEANINGFUL ADMINISTRATIVE REMEDIES

The Plaintiff also claims denial of meaningful administrative remedies. *See supra* pp. 2-3. But in the absence of interference with court access, the denial of meaningful

---

[18] *See supra* note 5; *see also Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir. 1996) ("prison regulations entitling prisoners to work do not create a constitutional liberty interest because a denial of employment opportunities to an inmate does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life'" (citation omitted)); *Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994) (holding that the loss of a prisoner's job did not result in a deprivation of liberty or property).

[19] *See, e.g.*, *Fidtler v. PA Department of Corrections*, 55 Fed. Appx. 33, 35 (3d Cir. Nov. 25, 2002) (unpublished op.) (prison policy which prohibited "idle pay" did not result in a deprivation of due process, as the inmate had no liberty or property interest in employment); *Grover v. Helman*, 175 F.3d 1019, 1999 WL 191503, Westlaw op. at 1 (7th Cir. Mar. 25, 1999) (unpublished op.) (an inmate's pay reduction did not implicate due process); *Izard v. Blair*, 173 F.3d 429, 1999 WL 96747, Westlaw op. at 2 (6th Cir. Feb. 3, 1999) (unpublished op.) (because an inmate had no constitutionally protected right to a particular prison wage, he lacked a liberty interest in its continuation).

administrative remedies would not implicate the Fourteenth Amendment's Due Process Clause.[20] As a result, this claim should be dismissed without prejudice.

VII. CLAIM INVOLVING CRUEL AND UNUSUAL PUNISHMENT

According to the Plaintiff, the termination of his employment showed deliberate indifference[21] under the Eighth Amendment. Amended Complaint at pp. 15-17. This allegation does not state a valid claim for relief.

The Eighth Amendment is implicated only if the punishment is "objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). In the amended complaint, Mr. Bonty alleges loss of a prison job and less pay in his new position. Amended Complaint at pp. 16-19. These allegations do not entail injuries that are

---

[20] *See Walters v. Corrections Corporation of America*, 119 Fed. Appx. 190, 191 (10th Cir. Dec. 7, 2004) (unpublished op.) (holding that a prisoner's "alleged denial of access to state administrative grievance procedures" would not have "resulted in a violation of his constitutional rights"); *Rauh v. Ward*, 112 Fed. Appx. 692, 693-94 (10th Cir. Oct. 14, 2004) (unpublished op.) (upholding dismissal of a prisoner's Section 1983 claim involving denial of access to the administrative grievance procedure in light of his access to the courts); *Davis v. Oklahoma Department of Corrections*, 2007 WL 869650, Westlaw op. at 1, 11-12 (W.D. Okla. Mar. 20, 2007) (unpublished op.) (holding that hindrance of the ability to exhaust administrative remedies would not implicate a prisoner's due process rights); *accord Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) ("When the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance.").

[21] Mr. Bonty also accuses Defendant Moody of "deliberate indifference" through her conspiracy with Defendant Plaster. Amended Complaint at p. 17. But the facts underlying the conspiracy claim remain unexhausted. *See supra* pp. 5-9.

sufficiently serious to implicate the Eighth Amendment.[22] Amendment cannot cure this defect, and the dismissal should be with prejudice. *See supra* p. 13.

---

[22] *See Joseph v. United States Federal Bureau of Prisons*, 232 F.3d 901, 2000 WL 1532783, Westlaw op. at 2 (10th Cir. Oct. 16, 2000) (unpublished op.) (holding that an allegation involving loss of a prisoner's job does not state a valid Eighth Amendment claim); *see also Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (holding that "limited work hours" for prisoners do not constitute "punishment" for purposes of the Eighth Amendment); *accord LaBounty v. Adler*, 933 F.2d 121, 123-24 (2d Cir. 1991) (exclusion "from the prison's maintenance electrician program does not even constitute 'punishment,' let alone punishment that is 'cruel and unusual'"); *Wendt v. Lynaugh*, 841 F.2d 619, 621 (5th Cir. 1988) (forcing prisoners to work without pay does not constitute cruel and unusual punishment under the Eighth Amendment); *Giba v. Cook*, 232 F. Supp. 2d 1171, 1186 (D. Ore. 2002) (holding as a matter of law that the Eighth Amendment was not violated by disciplinary sanctions which allegedly included an unjustified change in job assignment).

## VIII. CLAIMS INVOLVING NEGLIGENCE AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Mr. Bonty alleges negligence and intentional infliction of emotional distress. *See supra* pp. 2-3. The Defendants do not address these claims,[23] and they should survive.[24]

---

[23] Invoking the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) (2000), the Defendants address a claim labeled as one involving "emotional distress." Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 16-17 (Mar. 5, 2007) ("Plaintiff's Claim of Emotional Distress Should Be Dismissed."); Defendant's Motion to Dismiss and Brief in Support at pp. 13-14 (Mar. 5, 2007) ("Plaintiff's Claim of Emotional Distress Should Be Dismissed."). But in these sections the Defendants refer only to allegations involving violation of constitutional rights, racial discrimination, and cruel and unusual punishment. Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 16-17 (Mar. 5, 2007); Defendant's Motion to Dismiss and Brief in Support at pp. 13-14 (Mar. 5, 2007). The Defendants do not refer to the allegations involving a state law claim of intentional infliction of emotional distress. *See* Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at pp. 16-17 (Mar. 5, 2007); Defendant's Motion to Dismiss and Brief in Support at pp. 13-14 (Mar. 5, 2007). Thus, the Court need not address the applicability of 42 U.S.C. § 1997e(e) to a claim involving intentional infliction of emotional distress. *See Lawson v. Engleman*, 67 Fed. Appx. 524, 526-27 (10th Cir. June 6, 2003) (unpublished op.) (relying on 42 U.S.C. § 1997e(e) to uphold dismissal of a claim under Oklahoma law for intentional infliction of emotional distress); *Matelsky v. Gunn*, 15 Fed. Appx. 686, 687 & 689 (10th Cir. July 19, 2001) (unpublished op.) (applying 42 U.S.C. § 1997e(e) to a pendent state claim for intentional infliction of emotional distress).

[24] For the state law claims, diversity jurisdiction appears to exist.

Though incarcerated in Oklahoma, Mr. Bonty is a citizen of Hawaii. *See* Amended Complaint at pp. 2-3; *see also Ferrer v. Dailey*, 107 F.3d 367, 1996 WL 731618, Westlaw op. at 1 (10th Cir. Dec. 20, 1996) (unpublished op.) ("For purposes of diversity jurisdiction, when an inmate has been forcibly incarcerated in another state, the state of citizenship 'should be the state of which he was a citizen before he was sent to prison unless he plans to live elsewhere when he gets out . . . .'" (citations omitted)).

The Plaintiff's allegations also suggest that the amount in controversy would satisfy the requirement for diversity jurisdiction. Mr. Bonty seeks:

- "in excess of" $20,000.00 against multiple defendants under Section 1983,
- "in excess of" $20,000.00 against CCA for damages on the negligence claim,

## IX. THE DEFENDANTS' ARGUMENTS REGARDING A POSSIBLE FRAUD CLAIM

The Plaintiff uses the term "fraud" three times in the complaint,[25] prompting the Defendants to seek dismissal of a fraud claim based on a lack of particularity in the allegations.[26] The Defendants have read the complaint too broadly.

Even with a liberal construction, the complaint does not contain a separate claim for fraud.[27] In each reference to the term "fraud," the complaint summarizes the alleged misconduct and states that it "constitute[s] fraud and oppression, by reason of which Plaintiff

---

- "in excess of" $10,000.00 against multiple defendants for punitive damages on the negligence claim,
- "in excess of" $5,000.00 against CCA for damages on the claim involving intentional infliction of emotional distress, and
- "in excess of" $15,000.00 against multiple defendants for punitive damages on the claim involving intentional infliction of emotional distress.

Amended Complaint at pp. 19, 25-27. For diversity jurisdiction, the amount in controversy must exceed $75,000.00, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1) (2000). Thus, the Court would apparently maintain diversity jurisdiction even with dismissal of the federal claims. *See* 28 U.S.C. § 1332(a)(1) (2000).

[25] Amended Complaint at pp. 19, 25-26.

[26] Defendants' CCA, Plaster, Hickey and Moody Amended Motion to Dismiss and Brief in Support at p. 22 (Mar. 5, 2007); Defendant's Motion to Dismiss at p. 19 (Mar. 5, 2007).

[27] *See Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998) ("Although we construe pro se pleadings liberally, we will not rewrite a petition to include claims that were never presented." (citation omitted)); *Drake v. City*, 927 F.2d 1156, 1159 (10th Cir. 1991) ("Despite the liberal construction afforded pro se pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues." (citation omitted)).

is entitled to punitive damages." Amended Complaint at pp. 19, 25-26. The Plaintiff apparently used the term "fraud" to support his prayer for punitive damages.[28]

In responding to the motions to dismiss, the Plaintiff refers to three allegations of fraud.

The first is Ms. Hickey's alleged misrepresentation that the grievance policy does not cover actions against staff. Plaintiff's Response at pp. 14-15. This allegation does not reflect a separate claim for relief. As discussed above, the complaint refers to Ms. Hickey's alleged misrepresentation only as a basis for avoiding administrative exhaustion. Amended Complaint at p. 15; *see supra* pp. 5-6.

The second reference is the denial by Lt. Plaster and Chief Bryant about their role in the Plaintiff's termination. Plaintiff's Response at p. 15. In the complaint, the Plaintiff states that Lt. Plaster had blamed Chief Bryant and Assistant Warden Perez for the job termination,[29] but the Plaintiff does not refer to the representation as a separate basis for relief.

The third reference in the Plaintiff's response brief involves the denial of a right to an unbiased hearing before the imposition of sanctions. *Id.* In the complaint, the Plaintiff alleges that Mr. Bryant had failed to provide an unbiased hearing. But Mr. Bonty does not

---

[28] Under Oklahoma law until 1995, "fraud" or "oppression" could allow a claimant to obtain punitive damages in an amount exceeding the award of actual damages. Okla. Stat. tit. 23 § 9(A) (1991) (repealed 1995). Mr. Bonty apparently alleges "fraud and oppression" based on the pre-1995 law on punitive damages. *See supra* text accompanying note.

[29] Amended Complaint at p. 13.

identify any misrepresentations about the entitlement to an unbiased hearing. Amended Complaint at pp. 4-5. As a result, the Plaintiff's allegation about bias does not suggest the existence of a fraud claim.

The Court should liberally construe the complaint, but should decline to interpose a separate claim where none exists. Mr. Bonty did not plead fraud as a separate claim, and the Court should not create one under the guise of liberal construction.

X. RECOMMENDED RULINGS

Based on nonexhaustion of administrative remedies, the Court should dismiss without prejudice Mr. Bonty's claims involving:

- conspiracy,
- denial of equal protection based on race-discrimination, and
- termination from employment without an investigation or hearing.

Dismissal without prejudice is also appropriate based on a failure to state a valid claim on the causes of action involving retaliation and denial of meaningful administrative remedies. For these claims, the Court should grant leave to amend within twenty days of the order.[30]

In light of the failure to state a valid claim, the Court should dismiss with prejudice the causes of action involving:

---

30 *See Hall v. Bellmon*, 935 F.2d 1106, 1110 n.3 (10th Cir. 1991) ("pro se litigants are to be given reasonable opportunity to remedy the defects in their pleadings" (citations omitted)); *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990) ("we have extended to pro se plaintiffs an opportunity to remedy defects potentially attributable to their ignorance of federal law and motion practice . . . in a Fed.R.Civ.P. 12(b)(6) context" (citations omitted)).

- termination of employment in violation of prison policy,
- reduction in pay level, and
- cruel and unusual punishment.

The suggested rulings would leave in place Mr. Bonty's state law claims for negligence and intentional infliction of emotional distress. These claims were not addressed in the Defendants' dispositive motion.

XI. NOTICE OF RIGHT TO OBJECT

The parties can object to this report and recommendation. To do so, one must file an objection with the Clerk of this Court. The deadline for objections is May 10, 2007. *See* W.D. Okla. LCvR 72.1(a). The failure to timely object would foreclose appellate review of the proposed rulings. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

XII. DOCKETING INSTRUCTIONS

The referral to the undersigned is terminated. If the Court adopts the present recommendation, the undersigned would suggest a new referral for further proceedings.

Entered this 20th day of April, 2007.

Robert E. Bacharach

Robert E. Bacharach
United States Magistrate Judge